UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CORNERSTONE BUILDING BRANDS, INC., | No. 2:25-cv-13821-WJM-CF |
| Plaintiff, | OPINION |
| v. | |
| TEAMSTERS LOCAL 97 OF NEW JERSEY, TEAMSTERS LOCAL 97 BENEFITS FUND, | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Cornerstone Building Brands, Inc. ("Plaintiff" or "Cornerstone") brings this lawsuit against Teamsters Local 97 of New Jersey (the "Union") and Teamsters Local 97 Benefits Fund (the "Fund") (collectively "Defendants") under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act of 1947 ("LMRA"). Plaintiff seeks a declaratory judgment that it does not owe further contributions to the Fund, plus damages and costs. Defendants move to dismiss the Amended Complaint, ECF No. 10 ("AC"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 19 ("Motion"). Plaintiff opposes the Motion. ECF No. 22 ("Opposition"). The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions, and for the reasons set forth below, Defendants' Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**, and Defendants' alternative request for a stay pending arbitration is **GRANTED**. The Court further **ORDERS** that the accrual of interest and penalties, if ultimately owed, is **STAYED** pending the outcome of the arbitration as of the date of this Opinion.

**I.    BACKGROUND**

Cornerstone's[1] contracts with the Union ("2013 CBA," ECF No. 10-1; "2016 CBA," ECF No. 10-2; collectively, the "CBAs") and Fund ("Fund Agreement," ECF No. 19-2 at 4-80) obligate Cornerstone to pay health insurance premiums on behalf of its employees

---

[1] Silver Line Building Products, LLC, which Cornerstone subsequently acquired, originally entered into the CBAs. AC ¶¶ 14, 22-23.

1

who voluntarily elect to enroll in health insurance coverage. AC ¶¶ 1, 22-23.[2] The Fund, a multiemployer health and welfare plan, provides benefits to participating employees (and their spouses and dependents) and administers Cornerstone's various benefit plans. *Id.* ¶¶ 1-2. Under the Fund Agreement, Cornerstone, the "Employer," must "contribute to the Fund the amounts required by the Collective Bargaining Agreements and Participation Agreements between such Employer and a Union." Fund Agreement at 59. The CBAs also require Cornerstone to make contributions to the Fund for eligible employees. AC ¶ 29.

Both the Fund Agreement and the CBAs contain arbitration provisions. The Fund Agreement's arbitration provision states that the Fund "may proceed to arbitration" or may file an action in court under ERISA to "enforce the Employer's obligation" to make required contributions. Fund Agreement at 62. Similarly, the CBAs contain a grievance process when there are "[d]isputes arising out of application or interpretation of any of the provisions of the Agreement," which includes the ability for "either party" to proceed to arbitration. 2013 CBA at 6; 2016 CBA at 6. In the CBAs, Cornerstone "agrees to be bound by all of the provisions of the [Fund] Agreement." 2013 CBA at 27; 2016 CBA at 27.

The instant dispute arises out of the Fund's 2023 audit of Cornerstone's premium payments. AC ¶ 4. The audit revealed that Cornerstone failed to pay millions of dollars in premium payments. *Id.* ¶¶ 4, 47. Cornerstone challenges the auditor's methodology, asserting that the auditor erred by not consulting monthly List Files of employees for whom Cornerstone owed premiums. *Id.* ¶ 51. Therefore, Cornerstone alleges that the Fund now seeks premiums for employees who never voluntarily elected coverage and who never contributed their own share of their premiums. *Id.* ¶¶ 68-69.

Pursuant to the Fund Agreement, the Fund filed a request to arbitrate on January 28, 2025. Mot. 4; Opp'n 4 n.1; ECF No. 19-2 at 86. The arbitration has not yet occurred. Opp'n 7 n.3. Instead, on July 28, 2025, Plaintiff filed this action. Count 1 seeks a declaratory judgment against the Fund that Cornerstone does not owe additional contributions to the Fund for its employees under ERISA § 502(a)(11), 29 U.S.C. § 1132(a)(11). AC ¶¶ 73-77. Count 2 seeks monetary damages from the Union for its alleged breach the CBAs under 29 U.S.C. § 185. *Id.* ¶¶ 78-82. About a week later, Plaintiff filed the operative Amended Complaint. On September 18, 2025, Defendants filed the Motion, which is now fully briefed.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for lack of subject matter jurisdiction. The plaintiff bears the burden of proving that jurisdiction exists. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). Ordinarily,

---

[2] Citations to contracts refer to page numbers in the relevant agreement. Citations to the Amended Complaint reflect the stated paragraph, notwithstanding a typographical error skipping paragraphs 70 and 71.

2

the Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Gould Elecs.*, 220 F.3d at 176). While there are two types of challenges to subject matter jurisdiction, facial and factual, *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977), here, the distinction is immaterial because the Fund Agreement is incorporated by reference into the Amended Complaint, AC ¶ 68, and Cornerstone does not dispute that the Fund attempted to initiate arbitration in January 2025, Opp'n 4.

### III.   DISCUSSION

Defendants raise three bases for dismissal under Rule 12(b)(1). First, Defendants argue that this Court lacks subject matter jurisdiction because ERISA does not confer standing on employers like Cornerstone to file suit regarding their fund contributions. Mot. 7-9. Second, Defendants argue that this dispute is not ripe until the parties complete an arbitration proceeding. *Id.* 9-11. Third, Defendants argue that Cornerstone must exhaust its administrative remedies (*i.e.*, participate in arbitration) before proceeding in federal court. *Id.* 12-18. As it must, the Court "first address[es] the issue of subject matter jurisdiction." *Geda v. Dir. USCIS*, 126 F.4th 835, 841 (3d Cir. 2025).[3] Because the Court concludes that a stay is the most prudent course of action here, the Court declines to consider Defendants' 12(b)(6) arguments at this time.

#### A.   Statutory Standing

Article III requires a plaintiff to show injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Defendants do not dispute that Plaintiff met its burden here. Nor could they, as Plaintiff identifies an injury in fact (the amount of additional premium payments, plus interest, that Defendants claim it owes, AC ¶ 47), causation (a "fundamentally flawed" audit process, *id.* ¶¶ 47-49, 60), and redressability (a declaratory judgment clarifying Cornerstone's obligations, *id.* ¶¶ 73-82).

Instead, Defendants argue that Cornerstone, as an employer, lacks statutory standing under ERISA to sue the Fund or the Union because ERISA § 502(a)(11) does not authorize employers to file suit regarding collection of contributions. Mot. 8. However, on reply, Defendants abandon their statutory standing argument. ECF No. 23 ("Reply"); *see Est. of Albart by Albart v. Lavastone Cap. LLC*, No. 20-cv-00608, 2021 WL 1063339, at *2 (D. Del. Mar. 18, 2021) ("By abandoning its standing argument, [Defendant] implicitly conceded the correctness of Plaintiffs' assertion."); *Lincoln v. Magnum Land Servs., LLC*, 560 F. App'x 144, 150 (3d Cir. 2014) (recognizing abandonment when the reply brief did not discuss an argument). Even so, statutory standing arguments fall under Rule 12(b)(6), as Plaintiff notes. Opp'n 3; *see Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 270 (3d Cir. 2016) (holding that statutory standing is an element of proof relating to the

---

[3] Plaintiff does not challenge the Court's subject matter jurisdiction under 28 U.S.C. § 1331.

substantive cause of action); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (noting that lack of statutory standing "does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case" (citation omitted)). Either way, the Court concludes that Plaintiff sufficiently alleged constitutional standing and proceeds to consider ripeness and exhaustion.

### B. Ripeness

Next, Defendants argue that Cornerstone's claims are not ripe. Mot. 9-11. Defendants assert that because the arbitration proceeding has not yet been scheduled, Cornerstone jumped the gun. *Id.* 9. In response, Cornerstone argues that it does not need to wait for the Fund to sue before filing suit, else interest continues to accumulate. Opp'n 4-5.

The ripeness inquiry requires courts to "evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). When a declaratory judgment is involved, the Court applies this framework by considering "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (Alito, J.) (citation omitted); *see also Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (first articulating this test). Here, adversity and utility are not seriously in dispute. The parties offer fundamentally different interpretations of their ERISA obligations, meeting the adversity prong. *Contrast* AC ¶¶ 40-46 (describing Cornerstone's view of its premiums due), *with* Mot. 3-4 (describing the additional premiums that the Fund demands that Cornerstone pay). Similarly, a declaratory judgment would be useful to both parties, as it would resolve millions in allegedly overdue premiums and interest. AC ¶ 47.

As to conclusiveness, which "is a short-hand term for whether a declaratory judgment definitively would decide the parties' rights," *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 344 (3d Cir. 2001), the Court must "determine whether judicial action at the present time would amount to more than an advisory opinion based upon a hypothetical set of facts" that have yet to occur. *Presbytery of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir. 1994). In another employer-union dispute, the Third Circuit held that an employer's declaratory judgment action against its union met the conclusiveness factor because a declaratory judgment would fully establish the employer's liability. *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Loc. Union No. 66*, 580 F.3d 185, 190-92 (3d Cir. 2009). In particular, the Third Circuit reasoned that a declaratory judgment determining the legal meaning of an indemnification provision would change or clarify the parties' legal status, so the action was not based on any contingency or hypothetical events. *Id.* at 192.

In this case, the Court holds that the conclusiveness factor is met because Cornerstone seeks relief based entirely on *past* facts, such as the auditor's methodology during the 2023 audit and the parties' conduct, AC ¶¶ 40-69, which discovery will substantiate, not *future* events involving any sort of contingency or ongoing audit. As in *Pittsburgh Mack*, the Fund already issued multiple demands for payment, as well as to arbitrate, indicating the

Fund believes the dispute is ripe for adjudication. AC ¶ 47; 580 F.3d at 191-92. Based on its review of the Amended Complaint, the Court concludes that the conclusiveness factor is also satisfied because a declaratory judgment would fully resolve this dispute.

In sum, this dispute is ripe for adjudication. Cornerstone does not have to wait for the Fund to initiate arbitration as a prerequisite to filing suit while interest accrues. *See Lehigh Portland Cement Co. v. Cement, Lime, Gypsum, & Allied Workers Div., Int'l Bhd. of Boilermakers, Blacksmiths, Iron Ship Builders, Forgers & Helpers*, 849 F.2d 820, 822 (3d Cir. 1988) (holding that an employer can proceed in federal court, notwithstanding an arbitration provision, "when a contract contains no language which explicitly contemplates or permits the employer to *initiate* arbitration procedures" (emphasis added)). However, as discussed below, the ripeness of this dispute does not prevent the Court from issuing a discretionary stay pending arbitration. *See, e.g., Columbia Exp. Terminal, LLC v. ILWU-PMA Pension Fund*, No. 20-cv-08202, 2021 WL 4571998, at *3 (N.D. Cal. Apr. 7, 2021) (concluding that a declaratory judgment action was ripe but staying the case based on judicial efficiency in light of "the similarities of the issues" with another pending case).

### C.   Arbitration

Lastly, Defendants argue that "Plaintiff has used this Court as part of a creative attempt to work an end-run around the arbitration clause in both the CBA, to which it is a party, and the [Fund] Agreement, to which it is bound." Mot. 13. Defendants construe the agreements as "reflect[ing] Plaintiff's obligation to submit to arbitration" upon request by the Fund or Union, "even if it is in defense of an action." *Id.* 14. Defendants therefore argue for dismissal for failure to exhaust administrative remedies. *Id.* 18. On reply, Defendants request in the alternative that the Court stay this case pending the results of arbitration. Reply 12, 14.[4] In opposition, Plaintiff counters that because the CBAs and the Fund Agreement do not permit Cornerstone to initiate arbitration, it must go to court to assert its claims, so there can be no exhaustion requirement. Opp'n 7; *see Zipf v. AT&T Co.*, 799 F.2d 889, 891 (3d Cir. 1986) (declining to find an exhaustion requirement for substantive rights claims under ERISA).

However, the issue here is not exhaustion of administrative remedies. Instead, the Court must decide whether to proceed despite the pending arbitration.[5]

---

[4] Defendants note that they declined to file a motion to compel arbitration, Reply 11, and Plaintiff argues that Defendants likely waived the right to compel arbitration. Opp'n 7 n.3. The Court declines to address this issue because it is not properly before the Court.

[5] Although Plaintiff notes that "there are no arbitration proceedings currently underway," Opp'n 7 n.3, Defendants invoked the arbitration provisions in the Fund Agreement and are attempting to schedule the arbitration. Reply 3; ECF No. 23-1 at 4, 10. The Court declines to address Defendants' allegation that Plaintiff made a misstatement to the Court, Reply 1-3, and expects that the parties will proceed expeditiously in arbitration.

5

The power to stay a case "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort," requiring the "exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, (1936); *see also Windward Agency, Inc. v. Cologne Life Reinsurance Co.*, 123 F. App'x 481, 483 (3d Cir. 2005) (noting that "other circuits have found that a stay of proceedings pending arbitration contemplates continuing supervision by a court to ensure that arbitration proceedings are conducted within a reasonable amount of time"). A stay pending arbitration is common "[w]here significant overlap exists between parties and issues." *Crawford v. W. Jersey Health Sys. (Voorhees Div.)*, 847 F. Supp. 1232, 1243 (D.N.J. 1994) (collecting cases). However, complete overlap is unnecessary. *Neal v. Asta Funding, Inc.*, No. 13-cv-03438, 2014 WL 131770, at *3 (D.N.J. Jan. 6, 2014). The movant "must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983) (quoting *Landis*, 299 U.S. at 255).

As explained further below, balancing the interests, the Court concludes that a stay is warranted.[6] First, a stay would further judicial efficiency, particularly because there is significant overlap between the issues here and the issues in the underlying arbitration. Second, a stay comports with the federal policy in favor of arbitration. Finally, Defendants would suffer hardship if they have to face two proceedings with substantial, if not complete, overlap, whereas Plaintiff would not face hardship by having the arbitration proceed first while the accrual of interest is stayed.

> 1. Judicial Economy

First, arbitration would greatly aid the Court in resolving the issues here. Where there are overlapping facts, "it would be inadvisable to have these intertwined claims proceed simultaneously in court and in arbitration; such a procedure would be rife with opportunities for mutual interference, inconsistent rulings, and general procedural confusion." *Sheth v. Artech LLC*, No. 25-cv-01205 (WJM), 2025 WL 1588021, at *5 (D.N.J. June 5, 2025) (quoting *Neal v. Asta Funding, Inc.*, No. 13-cv-03438, 2014 WL 131770, at *5 (D.N.J. Jan. 6, 2014)) (granting a discretionary stay); *see also Marinelli v. Citibank, N.A.*, No. 22-cv-07023, 2023 WL 6558498, at *2 (D.N.J. July 25, 2023) (issuing a stay where there was "significant overlap of issues"). Indeed, an arbitration may resolve this entire case, further bolstering the basis for a stay. *See Sierra Rutile Ltd. v. Katz*, 937

---

[6] To the extent that Defendants improperly raised the stay request on reply, the Court also has the discretion to *sua sponte* stay proceedings as an exercise of its docket-management authority. *See, e.g., Lento v. Altman*, No. 24-cv-05150, 2024 WL 4754761, at *1, *3 & n.9 (D.N.J. Nov. 12, 2024) (issuing a discretionary stay *sua sponte* pending resolution of another case); *Gambrell v. Needham*, No. 17-cv-02884, 2017 WL 6557559, at *4 (E.D. Pa. Dec. 22, 2017) (issuing a *sua sponte* stay and collecting cases). A stay is also less harsh than dismissal, the relief Defendants seek. Mot. 18.

F.2d 743, 750 (2d Cir. 1991) ("It is appropriate, as an exercise of the district court's inherent powers, to grant a stay where the pending proceeding is an arbitration in which issues involved in the case may be determined." (citation modified)). Moreover, this case is still in its early stages, and any discovery that has already occurred will further resolution of the arbitration. *But see Ullman v. Express Scripts, Inc.*, No. 06-cv-03065, 2010 WL 421094, at *5 (D.N.J. Feb. 2, 2010) (denying a stay where the parties "engaged in extensive fact discovery as well as two rounds of dispositive motion practice"). Therefore, the Court concludes that a stay would greatly serve judicial economy.

### 2. Federal Arbitration Policy

Second, a stay would further the federal policy in favor of arbitration. The Supreme Court is clear that when the parties agree to arbitrate, national policy requires arbitration agreements to be "on equal footing with all other contracts." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Here, the Fund Agreement and the CBAs bind Plaintiff to participate in a properly initiated arbitration. *See* Fund Agreement at 60-62 (permitting the Fund to initiate arbitration proceedings "to enforce payment of the contributions due"); 2013 CBA at 6 (requiring arbitration, following a grievance procedure, of "[d]isputes arising out of application or interpretation of any of the provisions of the [CBA]"); 2016 CBA at 6 (same). Because Plaintiff "seek[s] a declaration that no contributions are owed," AC ¶ 10, which involves interpretation of the various agreements and the premium payment procedures, at least a substantial portion of this dispute falls within the purview of the arbitration. Furthermore, Plaintiff does not contend that the underlying dispute is not arbitrable. *See* Opp'n 6-8; *Interdigital Commc'ns Corp. v. Fed. Ins. Co.*, 308 F. App'x 593, 596 (3d Cir. 2009) ("[A] court cannot compel parties to arbitrate claims beyond the arbitrator's authority."). Therefore, a stay pending arbitration aligns with federal policy.

However, Plaintiff notes that an employer may proceed in federal court when the relevant arbitration agreement "contains no language which explicitly contemplates or permits the employer to initiate arbitration procedures, and the grievance structure is designed solely to afford the union the right to arbitrate." *Lehigh Portland Cement*, 849 F.2d at 822; Opp'n 7-8.[7] Yet here, the Fund and Union initiated arbitration first, and then Cornerstone came to federal court. *But see Lehigh Portland Cement*, 849 F.2d at 821 (describing the employer filing first in federal court). So while Cornerstone does not have to wait for the Fund or Union to initiate the arbitration before filing in federal court, *see supra* Part III(B), once an arbitration has been initiated involving overlapping issues, it would be improper to have this court conduct potentially duplicative, possibly inconsistent, parallel proceedings. *See Gunpowder Cap. Mgmt., LLC v. Darpel*, No. 24-cv-00914, 2025 WL 2697268, at *9 (M.D.N.C. Sept. 22, 2025) (granting a stay and noting that "a differing

---

[7] The Court does not determine whether the CBAs or the Fund Agreement permit Cornerstone to initiate arbitration regarding the issues in this case.

conclusion regarding a factual question common to both proceedings would lead to material inconsistencies between the two proceedings"); Reply 7.

Accordingly, a stay will hold Plaintiff to its commitment to be bound by arbitration, and the Court can resolve any remaining issues with the benefit of the arbitrator's ruling.

### 3. Hardship and Inequity

Finally, the Court concludes that hardship and inequity will result to Defendants if they have to litigate in overlapping proceedings, while Plaintiff would not suffer any prejudice from being held to its contractual obligation to arbitrate.

A stay pending arbitration is proper in cases where the non-movant is attempting to avoid arbitration. *See Olde Discount Corp. v. Tumpan*, 1 F.3d 202, 213 (3d Cir. 1993) (disapproving of a disposition that would effectively circumvent an arbitration agreement). On the other hand, a stay is inappropriate where plaintiff suffers "the hardship of being forced to wait for an indefinite" period, particularly when evidence may vanish. *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir. 1983).

Here, the balance of hardship tips toward Defendants. Defendants have an interest in vindicating their rights to arbitrate the underlying dispute and avoiding inconsistent judgments. *See Gunpowder Cap. Mgmt.*, 2025 WL 2697268, at *9 (granting a motion to stay because a stay "would eliminate the potential hardship resulting from competing, binding decisions"). Conversely, Plaintiff will not suffer any hardship from a stay pending a speedy arbitration provided that additional interest payments do not accrue during the pendency of the stay if the arbitrator ultimately determines that Plaintiff owes any interest. AC ¶ 47; Opp'n 4-5 & n.1. For this reason, the Court orders that the accrual of interest and penalties, if any, is stayed from the date of this Opinion. *See CTF Hotel Holdings, Inc. v. Marriott Intern., Inc.*, 381 F.3d 131, 139-40 (3d Cir. 2004) (reversing a stay where the district court failed to properly consider hardship). Pausing the accrual of any owed interest and penalties eliminates any potential harm to Plaintiff from a stay while also incentivizing Defendants to arbitrate the underlying dispute expeditiously. *See Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, No. 00-cv-04730, 2000 WL 1858556, at *9-11 (S.D.N.Y. Dec. 19, 2000) (issuing a stay pending arbitration where "hindrance of the arbitration is unlikely" and the non-movant would not suffer prejudice from a brief delay)

Balancing the factors, the Court concludes that a stay accompanied by a pause in the accrual of interest and fines is warranted and would serve judicial efficiency, federal policy favoring arbitration, and the parties' interests, all the while avoiding prejudice to any party.

## IV. CONCLUSION

For these reasons, the Court **DENIES** Defendants' motion to dismiss for lack of subject matter jurisdiction, **GRANTS** Defendants' alternative request for a stay pending arbitration, and **STAYS** the accumulation of any interest and penalties that may be owed. The parties are further **ORDERED** to file a status report with the Court every 90 days on the progress of the arbitration. *See Cheyney State Coll. Fac. v. Hufstedler*, 703 F.2d 732,

733 (3d Cir. 1983) (dismissing the appeal of a "moderate and actively monitored stay" where the district court required 90-day reporting on the progress of the parallel proceedings). Either party may move the Court to reopen the case if arbitration fails to resolve all issues or if either party attempts to delay arbitration. An appropriate order follows.

DATE: December 19, 2025

_____
WILLIAM J. MARTINI, U.S.D.J.

9